1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM KLAEHN, et al.,

Plaintiffs,

vs.

CALI BAMBOO, LLC, et al.,

Defendants.

CASE NO. 19cv1498-LAB (KSC)

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**

**[Dkt. No. 15]**

This is a putative consumer class action challenging Cali Bamboo, LLC's ("Cali") marketing of bamboo flooring.  Cali filed a Motion to Dismiss the First Amended Class Action Complaint.  Dkt. No. 15.  The Court **GRANTS** that motion **IN PART.**

## BACKGROUND

The Court accepts all well-pleaded allegations in the complaint as true for the purposes of the motion to dismiss.  *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).  These factual allegations are taken from the First Amended Class Action Complaint.  Dkt. No. 14 ("FAC").

### A.    Cali's Business and Marketing Representations

Cali develops and manufactures bamboo flooring for installation in homes and other structures (*id.* at ¶ 1), which it distributes, markets, and sells direct to consumers and through retailers (*id.* at ¶¶ 13–14).  The product is covered by a Limited Residential

1  Warranty ("Warranty").[1]  *Id.* at ¶¶ 52–53; Dkt. No. 15-3, Ex. A.

2          Plaintiffs allege that Cali communicated common and repeated themes in its

3  advertising about the durability and quality of the product, and about the Warranty.[2]  FAC

4  at ¶¶ 50–54.  Cali published these representations on the Internet and at retail stores that

5  sold the product.  *Id.* at ¶ 51.  Plaintiffs allege that Cali's representations were deceptive

6  because Cali concealed or failed to disclose that the product is defective in that it is

7  subject to premature cracking, splitting, warping, shrinking, buckling, separating, and

8  scratching due to its inability to withstand common changes in humidity.  *Id.* at ¶¶ 3, 54,

9  57–60.  According to Plaintiffs, because of this defect, the product is not durable and is

10  worth less than its sale price.  *Id.* at ¶ 54.  Plaintiffs further contend that Cali knew of the

11  defect but never disclosed it and intended to mislead consumers into believing its

12  representations about the product.  *Id.* at ¶¶ 60, 64–65.

13          **B.    Plaintiffs' Experiences with the Product**

14          Plaintiffs allege that they relied on Cali's marketing representations about the

15  strength and durability of the product and expected it would have a usable lifetime of at

16  least 50 years.  *Id.* at ¶¶ 2, 56.  Each Plaintiff alleges a unique purchasing and installation

17  history.

18          William Klaehn, an Ohio resident, purchased the product from Lowe's around April

19  2018.  *Id.* at ¶¶ 17–19.  He learned of it from a Cali advertisement display at Lowe's,

20  which represented that Cali flooring was the "'World's Hardest Floors™,' 'Pet-Friendly,'

21  scratch resistant, 'High Heel Resistant,' long-lasting, durable and guaranteed to last 50

22

23  _____

24  [1] Cali attaches the Warranty as Exhibit A to its Motion to Dismiss and argues that it is
   incorporated by reference into the FAC.  Dkt. No. 15-1 ("MTD") at fn. 3; Dkt. No. 15-3.

25  Plaintiffs do not dispute this, and the Court agrees.  *See Wilde v. Flagstar Bank FSB*, No.
   18-cv-1370, 2019 WL 1099841, at *1 n.1 (S.D. Cal. Mar. 8, 2019).

26  [2] Cali points out that the Warranty includes three separate warranties: a 1-year warranty
   against manufacturing defects which ends on the date of installation, a 50-year

27  delamination warranty, and a 50-year surface finish warranty.  MTD at 8–10, 24; Dkt. No.
   15-3.

28

1   years." *Id.* at ¶ 18.  After installation in his home, in December 2018, he noticed his floors
2   were "cracked throughout" and "showed some scratches." *Id.* at ¶ 20.

3       Maria Cocchiarelli-Berger, a Colorado resident, purchased the product from
4   Lowe's around March 28, 2016.  *Id.* at ¶¶ 24–26.  She learned of it from a Lowe's
5   salesperson who told her that Cali floors "were very durable, harder than any woods
6   available, did not scratch, easy to clean, were pet resistant, and would last [50] years."
7   *Id.* at ¶ 25.  After installation in her home, the flooring "started scratching almost
8   immediately," showed "gaps around the edges," and was "difficult to clean." *Id.* at ¶ 27.

9       Doreen Condit, a California resident, purchased a home in March 2018.  *Id.* at
10  ¶¶ 29–30.  The prior owner of the home purchased the product on April 27, 2012 and had
11  it installed in the home after September 12, 2012.  *Id.* at ¶ 30.  The prior owner told Condit
12  she had selected bamboo flooring because it is "very hard and durable, better for the
13  environment, and had a long warranty."  *Id.*  After purchasing the home, Condit noticed
14  cracking in much of the flooring.  *Id.* at ¶ 32.

15      Roland Gatchell, a Massachusetts resident, purchased the product from Lowe's
16  around February 17, 2016.  *Id.* at ¶¶ 36, 39.  The Cali advertisement display at the Lowe's
17  represented that it included a 50-year warranty, and a Lowe's salesperson told him that
18  it was "easy to install, durable, and had a 50-year warranty."  *Id.* at ¶ 37.  The product
19  was installed in September 2016.  *Id.* at ¶ 39.  In summer 2017, Gatchell noticed
20  "buckling" in his floors.  *Id.* at ¶ 40.  Since then, his floors have "continued to buckle and
21  cup, and [started to] splinter."  *Id.* at ¶¶ 41–42.

22      Mark Lonczak, a California resident, learned of Cali floors from his contractor who
23  recommended them and told Lonczak that "bamboo is extremely durable, moisture-
24  resilient, [and] scratch resistant."  *Id.* at ¶¶ 43–44.  Lonczak instructed his contractor to
25  purchase the product from Cali around September 2014.  *Id.* at ¶ 45.  Approximately three
26  months after installation in his home, he noticed that the flooring was "buckling and had
27  'accordioned' in places."  *Id.* at ¶¶ 45–46.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.     Plaintiffs' Claims

Plaintiffs seek to represent a nationwide class of purchasers of Cali's product from Lowe's from January 1, 2012 to present, and directly from Cali between January 1, 2012 and December 31, 2016.  FAC at ¶ 67.  Plaintiffs bring three claims on behalf of this putative class: (1) violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770, *et seq.* ("CLRA"); (2) unlawful business practice under the Unfair Competition Law, Cal. Bus. and Prof. Code §§ 17200, *et seq.* ("UCL"), and (3) unfair business practices under the UCL.  *Id.* at ¶¶ 81–98.

### ANALYSIS

A motion to dismiss tests the sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

"[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). This particularity requirement extends to allegations of who made the misrepresentations, how the misrepresentations were conveyed to the plaintiff, and under what circumstances the misrepresentations were made.  *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998).

### A.     Standing

Cali makes two arguments challenging Plaintiffs' standing to sue under California consumer protection law—one argument addressed to the out-of-state Plaintiffs, the other

1   to California Plaintiffs.[3]   MTD at 13–17.   The Court agrees with Cali that the California

2   Plaintiffs failed to allege facts supporting standing for these claims.   The out-of-state

3   Plaintiffs' consumer protection claims, on the other hand, cannot be dismissed for lack of

4   standing.

5   **1.    Out-of-State Plaintiffs' Standing to Pursue California Claims**

6   Cali asserts that nonresident Plaintiffs—Klaehn, Berger, and Gatchell—lack

7   statutory standing to pursue claims under California law.   *Id.* at 13–15.   According to Cali,

8   because nonresident Plaintiffs did not live in California when they saw Cali's

9   advertisements, purchased, and installed the product, they cannot sue under California's

10   consumer protection laws.   *Id.*   The Court disagrees.

11   "Whether a nonresident plaintiff can assert a claim under California law is a

12   constitutional question based on whether California has sufficiently significant contacts

13   with the plaintiff's claims." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D.

14   Cal. 2012) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–90 (9th Cir.

15   2012)).   The nonresident Plaintiffs allege here that Cali is a California company

16   headquartered in California and that the misconduct originated in California.   *See* FAC at

17   ¶¶ 6–7, 13. Accepting these allegations as true, application of California law is

18   constitutionally permissible.   *See Forcellati*, 876 F. Supp. 2d at 1160 ("[The out-of-state]

19   Plaintiff alleges that Defendants are headquartered in Los Angeles, California.   Therefore,

20   application of California law poses no constitutional concerns."); *see also Chavez v. Blue*

21   *Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are

22   headquartered in California and their misconduct allegedly originated in California.   With

23   such significant contacts between California and the claims asserted by the class,

24

---

25   [3] Cali correctly points out that Plaintiffs do not adequately plead subject matter jurisdiction because Plaintiffs fail to plead the citizenship of Cali. *Fadal Machining Centers, LLC v.*

26   *Mid-Atl. CNC, Inc.*, 464 F. App'x 672, 674 (9th Cir. 2012).   This defect is grounds for dismissal without prejudice, however Cali does not dispute that jurisdiction can be

27   properly pled.   MTD at fn. 1.   Accordingly, if Plaintiffs amend the FAC, Plaintiffs must properly plead Cali's citizenship.

28

1   application of the California consumer protection laws would not be arbitrary or unfair to

2   defendants."); *Collazo v. Wen by Chaz Dean, Inc.*, 2:15-CV-01974-ODW-AGR, 2015 WL

3   4398559, at *4 (C.D. Cal. July 17, 2015) ("[T]here is not a single published case that

4   suggests a California company, with a principal place of business and headquarters in

5   California, cannot be sued in California for violating California protection laws.").  Plaintiffs

6   allege that Cali is a California LLC with its principal place of business and headquarters

7   in San Diego, California.  FAC at ¶¶ 7, 13.  Plaintiffs also allege that Cali communicated

8   common and repeated themes about the product in its advertising.  *Id.* at ¶¶ 50–54.

9   Nonresident Plaintiffs therefore have alleged that California has significant contacts with

10  their claims and may avail themselves of California's consumer protection laws.  *See*

11  *Collazo*, 2015 WL 4398559, at *4–5.

12          Cali relies on *Mazza*, 666 F.3d 581, arguing that consumer protection claims

13  "should be governed by the consumer protection laws of the jurisdiction in which the

14  transaction took place."  MTD at 14–15 (quoting *Mazza*, 666 F.3d at 594).  In *Mazza*, the

15  Ninth Circuit held that non-California purchasers of a defendant's cars could not sue

16  under California's consumer protection laws even though defendant was headquartered

17  in California.  *Mazza*, 666 F.3d at 594.  But the statement Cali relies on is not a generally

18  applicable rule.  The *Mazza* court instead limited it to "the facts and circumstances of

19  [that] case" (*id.*), which the parties developed through an exhaustive choice of law

20  analysis.  *Id.* at 591 ("In its briefing, Honda exhaustively detailed the ways in which

21  California law differs from the laws of the 43 other jurisdictions in which class members

22  reside.").  Cali has provided no such analysis, nor would one be appropriate at this early

23  stage of litigation.  *See In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237–38

24  (N.D. Cal. 2012) (holding that "a detailed choice-of-law analysis would be inappropriate"

25  at the motion to dismiss stage and finding that out-of-state plaintiffs had standing to sue

26  under California law where defendant's conduct "originated in or had strong connections

27  to California."); *see also Gold v. Lumber Liquidators, Inc.*, No. 14-CV-05373-TEH, 2015

28  WL 7888906, at *5 (N.D. Cal. Nov. 30, 2015).

        The Court **DENIES** Cali's motion to dismiss nonresident Plaintiffs' claims for lack
of statutory standing.

1

2    ## 2.    Article III Standing

3        Cali next contends that California Plaintiffs—Condit and Lonczak—lack Article III

4    standing because they fail to allege injury traceable to Cali's challenged conduct.[4]   MTD

5    at 16–17.  The Court agrees.

6        Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a suit if the

7    court lacks subject matter jurisdiction over the claims at issue.  *Maya v. Centex Corp.*,

8    658 F.3d 1060, 1067 (9th Cir. 2011).  A court lacks subject matter jurisdiction if a plaintiff

9    does not have Article III standing.  *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177,

10   1184 (9th Cir. 2012).  To demonstrate Article III standing, a plaintiff must allege "(1) it has

11   suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,

12   not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of

13   the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be

14   redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

15   *(TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  Fashioning a complaint as a class action does

16   not change Article III's standing requirement.  *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540,

17   1547 n.6 (2016) (citation omitted).  Each named plaintiff must establish Article III standing.

18   *Id.*  And each plaintiff must establish a "'line of causation'" between defendant's conduct

19   and their alleged injury "that is more than 'attenuated.'"  *Maya*, 658 F.3d at 1070 (quoting

20   *Allen v. Wright*, 468 U.S. 737, 757 (1984)).  The injury must not be "the result of the

21   independent action of some third party not before the court."  *Berkoff v. Masai USA Corp.*,

22   No. EDCV 10-00969 VAP(Opx), 2011 WL 13224836, at *3 (C.D. Cal. Mar. 3, 2011)

23

24   [4] The Court construes this argument as a facial attack on subject-matter jurisdiction.  *See*
25   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "The district court
     resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the
26   plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor,
     the court determines whether the allegations are sufficient as a legal matter to invoke the
27   court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation
     omitted).
28

1    (internal quotations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

2    (1992)).

3         Here, Condit and Lonczak do not plead an injury fairly traceable to Cali's allegedly

4    deceptive marketing.  Condit alleges that she relied on representations by the prior owner

5    of her home regarding its flooring.  FAC at ¶ 30.  Condit also alleges that the prior owner

6    gave her documents related to the flooring, but she does not allege that she read or relied

7    upon those documents.  *Id.* at ¶¶ 30–31.  Lonczak alleges that he relied on "information

8    his contractor conveyed to him" about Cali flooring.  *Id.* at ¶¶ 44–45.  Neither Condit nor

9    Lonczak allege that they saw, or relied upon, any representation made by Cali.  Instead,

10   they allege only that they relied upon the representations of third parties—namely, for

11   Condit, her home's prior owner, and for Lonczak, his contractor—who may or may not

12   have even been aware of Cali's advertising.  As a result, the line of causation connecting

13   their injuries to Cali's challenged actions is attenuated.  *See Maya*, 658 F.3d at 1070.

14   Because Condit and Lonczak do not adequately allege a sufficient connection between

15   Cali's actions and the information they relied upon in making their purchases, they fail to

16   demonstrate causation sufficient to support Article III standing.  Subject matter jurisdiction

17   is therefore absent.

18        The Court **GRANTS** Cali's motion to dismiss Condit's and Lonczak's claims for

19   lack of Article III standing.  Because Condit and Lonczak lack standing, it is unnecessary

20   to reach Cali's other arguments attacking their claims.  *See Rivera v. R.R. Ret. Bd.,* 262

21   F.3d 1005, 1008 (9th Cir. 2001).  The remainder of this Order therefore applies only to

22   the claims of Klaehn, Berger, and Gatchell.

23        **B.    CLRA Claim**

24        The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

25   practices undertaken by any person in a transaction intended to result or that results in

26   the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

27   "Conduct that is 'likely to mislead a reasonable consumer' violates the CLRA."  *Wilson v.*

28   *Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Colgan v. Leatherman*

*Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006)).  Rule 9(b)'s heightened pleading standards apply to claims under the CLRA.  *Kearns v. Ford Motor. Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted).

Plaintiffs allege that Cali violated Sections 1770(a)(5), (a)(7), and (a)(9) of the CLRA by knowingly (1) failing to disclose the defect (*i.e.*, a fraudulent omission) and (2) falsely representing that the product was of a particular standard or quality (*i.e.*, an affirmative misrepresentation).  FAC at ¶¶ 81–89.  In response, Cali argues that Plaintiffs' claims fail under both theories.  The Court agrees with Cali.

### 1.      Fraudulent Omission

Cali contends that Plaintiffs' fraudulent omission theory fails for three reasons.  First, Cali argues that it had no duty to disclose the defect and is not liable for its omission because Plaintiffs do not allege a safety hazard.  MTD at 18–19.  Second, Cali argues that it had no duty to disclose the defect because Plaintiffs do not sufficiently allege that Cali knew of the defect when Plaintiffs purchased the product.  *Id.* at 19–22.  Third, Cali argues that Plaintiffs do not adequately plead reliance on any omission.  *Id.* at 22–23. The Court finds that Plaintiffs adequately pled reliance, but failed to allege either a safety hazard or facts supporting their contention that Cali knew of the defect.

### i.      Unreasonable Safety Hazard

"California courts have generally rejected a broad obligation to disclose [defects], and instead held a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."  *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *6 (S.D. Cal. Dec. 23, 2015) (quoting *Wilson*, 668 F.3d at 1141) (internal quotations omitted).  But a party may nevertheless state a claim for failing to disclose a defect by alleging "(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and that the manufacturer knew of the defect at the time a sale was made."  *Williams v. Yamaha Motor*

1   *Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (quoting *Apodaca v. Whirlpool Corp.*, No.

2   13-00725 JVS (ANx), 2013 WL 6477821, at *9 (C.D. Cal. Nov. 8, 2013)).

3       Plaintiffs do not dispute that they allege no safety hazard.  Dkt. No. 20 ("Opp.") at

4   29–30.  Instead they contend they need not plead a safety hazard because Cali made

5   partial statements—namely, about the strength, durability, expected life, and warranty

6   period of the product—creating a duty to disclose.  *Id.* at 29 (relying on *Gold*, 2015 WL

7   7888906 and *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (2010)).[5]  But Plaintiffs

8   offer no authority permitting the Court to depart from the rule stated in *Wilson* that only

9   omissions relating to safety hazards are actionable.  *See Gaines v. Gen. Motors Co.*, No.

10  17CV1351-LAB (JLB), 2019 WL 913088, at *4 (S.D. Cal. Feb 25, 2019) ("*Wilson* stands

11  for the proposition that, under California law, a manufacturer has a duty to disclose and

12  can be liable for an omission only if the defect creates an unreasonable safety risk.")

13  (citing *Wilson*, 668 F.3d at 1141–43).

14      Plaintiffs argue in the alternative that they need not plead a safety issue because

15  the defect manifested within the warranty period.  Opp. at 29 (citing *Wilson*, 668 F.3d at

16  1142–43 n.1).  But the FAC does not include factual allegations to support this theory, let

17  alone identify which of the three warranties purportedly applies.  *See* Dkt. No. 15-3.  As

18  such, Plaintiffs cannot rely on an unspecified warranty to avoid *Wilson*'s requirement that

19  they plead a safety hazard.

20      Because Plaintiffs have failed to plead a safety hazard, Cali had no duty to disclose

21  the defect.

22

---

23  [5] Even if Plaintiffs pled a safety issue, it's far from clear that they have alleged an

24  actionable partial statement.  *See e.g.*, *Gold*, 2015 WL 7888906, at *7 (dismissing
    statements by defendant including "durable," "harder than hardwood," and "long lasting"

25  as non-actionable puffery); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d
    1134, 1145 (9th Cir. 1997).  The FAC alleges generally that Cali made a variety of

26  representations (*see e.g.*, FAC at ¶¶ 49–53).  Such general allegations are insufficient
    under Rule 9(b).  Plaintiffs' specific allegations (*see id.* at ¶¶ 18, 25, 37) may pose a closer

27  question under the CLRA's "reasonable consumer" standard, however the Court does not

28  address the issue given Plaintiffs' failure to plead a safety hazard.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii.     Knowledge of the Defect

To state a claim for failing to disclose a defect, "plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale." *Wilson*, 668 F.3d at 1145 (citing *In re Sony HDTV Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("Sony had no duty to disclose facts of which it was unaware")); *see also Williams*, 851 F.3d at 1025–26 (a duty to disclose a defect exists only if "the manufacturer knew of the defect at the time the sale was made").   Conclusory allegations including anecdotal consumer complaints, without dates or more information, do not satisfy Rule 9(b) and cannot impute a duty to disclose on a defendant. *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *5 (N.D. Cal. June 16, 2010).   And even allegations that a defendant received, on identified dates prior to the plaintiff's purchase, a handful of complaints specifying the issue do not suffice to establish that the defendant knew of an alleged defect. *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011).   Instead, such allegations show only that a defendant knew that "some consumers were complaining.   By themselves they are insufficient to show [knowledge of an actual defect]." *Berenblat v. Apple, Inc.*, Nos. 08-4969, 09-1649 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. April 9, 2010).

Here, Plaintiffs have not plausibly alleged that Cali knew of the defect at the time of Plaintiffs' purchases.   The FAC includes a variety of conclusory allegations asserting that Cali did know. *See e.g.* FAC at ¶ 64 ("Defendant is well aware of the problems . . . [with] the Product"), ¶ 76 ("Defendant knew or reasonably should have known that the Product was defective before its sale.").   However, conclusory allegations are insufficient without more. *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008) (dismissing CLRA claim, disregarding conclusory allegations about defendant's knowledge of the alleged defect).   And Plaintiffs' other allegations likewise

fail to plausibly establish that Cali knew of the defect.[6]   The FAC provides eleven complaints posted on websites by unidentified consumers.  FAC at ¶ 65.  A handful of these complaints assert that the complaining customer contacted Cali.  But alleging that Cali knew that some customers were complaining is not the same as alleging that Cali knew that their product was, in fact, defective.  *See Berenblat*, 2010 WL 1460297, at *9.  Moreover, only one of the complaints pre-dates Berger's and Gatchell's purchases (FAC at ¶¶ 26, 39, 65(i)), and this single complaint on its own does not plausibly establish that Cali knew of the defect when they made their purchases.  Although nine complaints pre-date Klaehn's purchase, the majority do not clearly identify the product(s) at issue (*id.* at ¶ 65(b), (d), (e), (f), (g), (j)) or clearly relate to the defect (*id.* at ¶ 65(c)[7]).

Taken as a whole, the complaints do not plausibly show that Cali knew of the defect prior to Plaintiffs' respective purchases.  *See Gold*, 2015 WL 7888906, at *8 ("Though Plaintiffs allege 'thousands' of customers made such complaints, they list only four. Simply put, then, Plaintiffs have not 'plausibly' pleaded that [defendant] was on notice of any defect at the time Plaintiffs purchased their flooring.").[8]   Because Plaintiffs have not

---

[6] Plaintiffs argue that because Cali received warranty claims from "customers" (including Klaehn) and hosts a website with the Warranty, Cali was aware of the defect. Opp. at 25 (citing FAC at ¶ 64).  The Court disagrees.  First, Plaintiffs' conclusory allegation that unidentified customers made warranty claims is not consistent with Plaintiffs' obligation to plead specific facts under Rule 9(b).  And Klaehn's warranty claim does not establish that Cali knew of the defect as his claim post-dates each of Plaintiffs' purchases.  *See* FAC at ¶ 19 (Klaehn made his purchase in April 2018, two years after Berger's and Gatchell's purchases); *see Gold*, 2015 WL 7888906, at *8 (finding that complaints made by named plaintiffs to defendant after plaintiffs' purchases were insufficient to establish knowledge of an alleged defect) (citing *Baba*, 2011 WL 317650, at *3).  Finally, the mere fact that Cali hosted a website with its Warranty does not show that Cali knew of the defect.

[7] Only three of the posts connect humidity or climate issues with the problems experienced.  FAC at ¶ 65(b), (h), (i).

[8] Plaintiffs' reliance on *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) and *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094 (S.D. Cal. 2017) is misplaced. Cali correctly points out these cases involved greater numbers of complaints addressing a substantially uniform issue with a specific product.  *Falk*, 496 F. Supp. 2d at 1092 (listing

1  adequately alleged specific facts to establish that Cali knew of the defect at the time of

2  sales, Cali had no duty to disclose it.

3                               **iii.    Reliance on the Omission**

4       "For fraud based claims under the CLRA, [a] plaintiff must also plead actual

5  reliance." *Myers v. BMW of N. Am.*, No. 16-CV-00412-WHO, 2016 WL 5897740, at *6

6  (N.D. Cal. Oct. 11, 2016) (internal quotations and citation omitted).  "To prove reliance on

7  an omission, a plaintiff must show that the defendant's nondisclosure was an immediate

8  cause of the plaintiff's injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d

9  1217, 1225 (9th Cir. 2015).  "In other words, 'a plaintiff must show that had the omitted

10 information been disclosed, one would have been aware of it and behaved differently.'"

11 *Hall*, 2015 WL 9659911, at *5 (quoting *Sanchez v. Wal Mart Stores, Inc.*, No. Civ. 2:06-

12 CV-02563-JAM-KJM, 2009 WL 2971553, at *2 (E.D. Cal. Sept. 11, 2009)).

13      Here, Plaintiffs have adequately pled reliance.  Klaehn and Gatchell allege that

14 each saw Cali's displays at Lowe's.  FAC at ¶¶ 18–19, 37–39.  Gatchell and Berger allege

15 that each spoke to Lowe's salespersons who made representations to them about the

16 product.  *Id.* at ¶¶ 25, 38.  Plaintiffs allege that neither the displays nor the Lowe's

17 salespersons disclosed the defect to them, and that Plaintiffs relied on these omissions

18 in purchasing the product.  *Id.* at ¶¶ 18–19, 25–26, 38–39.  As a result, Plaintiffs have

19 pled with specificity both how they were exposed to Cali's representations and how they

20 would have behaved differently if the allegedly omitted information had been disclosed.

21 *See e.g.*, *Daniel*, 806 F.3d at 1226 (holding that plaintiffs who interacted with and received

22 information from sales representatives at authorized Ford dealerships was "sufficient to

23 sustain a factual finding that [p]laintiffs would have been aware of the disclosure if it had

24

25

26 consumer complaints posted on the Internet, some of which reference "hundreds of
   similar complaints" and conclude "widespread problem[s] with similar GM models");
27 *Becerra*, 241 F. Supp. 3d at 1102 (alleging "121 detailed consumer complaints" posted
28 on government database about inadequate headlights) (internal quotations omitted).

1  been made through Ford's authorized dealerships").  Accordingly, Plaintiffs have
2  sufficiently pled reliance.

3                    **2.    Affirmative Misrepresentation**

4          Cali asserts that Plaintiffs' affirmative misrepresentation theory fails for three
5  reasons.  First, Cali argues that Plaintiffs fail to plead the falsity of any statement made
6  by Cali.  MTD at 23–26.  Second, Cali argues that Plaintiffs did not adequately allege that
7  Cali knew that any representation was false when made.  *Id.* at 26–27.  Third, Cali argues
8  that Plaintiffs fail to plead facts showing reliance on any misrepresentation by Cali.  *Id.* at
9  27–28.  Plaintiffs offer no argument in opposition, contending only that they have
10 sufficiently alleged CLRA claims based on a fraudulent omission.  Opp. at 20–30.
11 Plaintiffs' failure to oppose Cali's motion to dismiss amounts to abandonment of the
12 affirmative misrepresentation theory.  *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191,
13 1205 (N.D. Cal. 2014) (collecting cases).

14         Plaintiffs have not adequately pled a CLRA claim under either an omission theory
15 or an affirmative misrepresentation theory.  Accordingly, the Court **GRANTS** Cali's motion
16 to dismiss Plaintiffs' CLRA claims.

17         **C.    UCL Claims**

18         The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and
19 unfair, deceptive, untrue or misleading advertising."  Cal. Civ. Code § 17200.  Cali
20 contends that Plaintiffs fail to identify any such act or practice.  The Court agrees.

21                    **1.    Unlawful Conduct**

22         Unlawful conduct under the UCL is "anything that can properly be called a business
23 practice and that at the same time is forbidden by law."  *Eckler v. Wal-Mart Stores, Inc.*,
24 No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *4 (S.D. Cal. Nov. 1, 2012) (quoting *Cel-*
25 *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).
26 When a "[p]laintiff has adequately alleged a violation of the CLRA, [the plaintiff] has also
27 sufficiently alleged a violation under the unlawfulness prong of the UCL."  *Ehret v. Uber*
28 *Techs., Inc.*, 68 F. Supp. 3d 1121, 1139 (N.D. Cal. 2014).

Plaintiffs allege only one violation of law—violation of the CLRA. But Plaintiffs have not adequately pled a CLRA claim. They therefore fail to state a claim under the unlawful prong of the UCL. The Court **GRANTS** Cali's motion to dismiss Plaintiffs' UCL unlawful conduct claims.

### 2.   Unfair Conduct

"What constitutes unfair conduct in consumer actions under the UCL is unclear." *Kent v. Hewlett-Packard Co.*, No. 09-5341 JF (PVT), 2010 WL 2681767, at *11 (N.D. Cal. July 6, 2010) (citation omitted). "[T]hree separate tests have developed to determine if conduct is 'unfair' for purposes of the UCL." *Ehret*, 68 F. Supp. 3d at 1137 (citation omitted). "One definition is a practice that 'offends an established public policy' or that 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to customers.'" *Eckler*, 2012 WL 5382218, at *4 (quoting *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009)). "An unfair practice may also be one in which '(1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided.'" *Id.* (quoting *Morgan*, 177 Cal. App. 4th at 1255). Under another approach, "California courts balance the 'impact on [] its alleged victim' against 'the reasons, justifications, and motives of the alleged wrongdoer.'" *Ehret*, 68 F. Supp. 3d at 1137 (quoting *Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 4275519, at *5 (N.D. Cal. Aug. 29, 2014)).

Plaintiffs do not adopt any of these three theories, instead contending that a violation of the CLRA constitutes unfair conduct under the UCL. *See Krueger v. Wyeth, Inc.*, No. 03CV2496 JAH (AJB), 2011 WL 8971449, at *11 (S.D. Cal. Mar. 30, 2011) ("conduct alleged to be fraudulent is by definition unfair") (citing *Blakemore v. Superior Court,* 129 Cal. App. 4th 36, 49 (2005)). But Plaintiffs fail to plead a claim under the CLRA, so even under their theory that a CLRA violation constitutes unfair conduct, they

1  do not state an unfair conduct claim.  The Court **GRANTS** Cali's motion to dismiss

2  Plaintiffs' UCL unfair conduct claims.[9]

3  **D.  Other Issues**

4  **1.  Equitable Relief**

5  Cali asserts that Plaintiffs are not entitled to pursue equitable relief for two reasons.

6  First, Cali argues that Plaintiffs have no Article III standing to seek injunctive relief

7  because Plaintiffs do not allege that they are likely to suffer future harm.  Second, Cali

8  argues that Plaintiffs are not entitled to equitable relief under the UCL because Plaintiffs

9  have not alleged an inadequate remedy at law.

10  **i.  Standing to Pursue Injunctive Relief**

11  To establish standing for injunctive relief, plaintiffs must "demonstrate that [they

12  have] suffered or [are] threatened with a concrete and particularized legal harm, coupled

13  with a sufficient likelihood that [they] will again be wronged in a similar way."  *Bates v.*

14  *United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (internal quotations omitted).

15  Plaintiffs do not allege that they plan to repurchase the product or are likely to be deceived

16  by Cali's allegedly deceptive marketing in the future, so Plaintiffs have not shown there is

17  any likelihood they will suffer future harm.  *See Davidson v. Kimberly-Clark Corp.*, 889

18  F.3d 956, 967 (9th Cir. 2018) (holding that a deceived consumer *may* have standing to

19  sue for injunctive relief based on allegedly false advertising, but the consumer must still

20  establish the threat of actual and imminent injury).  The FAC fails to plead facts that would

21  support standing to seek injunctive relief.

22  **ii.  Adequacy of Remedy at Law**

23  The UCL provides only equitable remedies of restitution and injunctive relief.

24  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).  Plaintiffs

25
26
27
28

[9] Even if the Court were to apply the three tests courts have applied to determine whether conduct is unfair under the UCL, Plaintiffs have not adequately pled facts showing that Cali's actions offend an established public policy or are immoral, oppressive, and substantially injurious to customers.  Nor have Plaintiffs shown why, on balance, their injury is not outweighed by any countervailing benefits to consumers or competition.

seeking equitable relief under the UCL must establish there is no adequate remedy at law.  *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016); *see also Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259–60 (C.D. Cal. 2003) (plaintiff must allege inadequacy of remedy at law to plead a claim under the UCL).  While the availability of monetary damages does not necessarily preclude the availability of equitable relief under the UCL, Plaintiffs must still plausibly allege that there is no adequate legal remedy.  *See Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 3d 1276, 1281–82 (S.D. Cal. 2019) (holding that a plaintiff may concurrently pursue monetary damages and alternative equitable remedies under the UCL); *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015). They have not done so.  Because the FAC fails to satisfy this minimal burden, Plaintiffs cannot pursue equitable relief under the UCL.  Should Plaintiffs amend their claim, they must specifically allege the equitable relief they are seeking and why legal relief is not adequate to address Plaintiffs' alleged harms.

## 2.    CLRA Notice Requirement

Cali seeks to dismiss Plaintiffs' (except for Klaehn's) CLRA claims for damages because they did not give notice to Cali of their claims under Cal. Civil Code § 1782.[10] That section requires that consumers seeking to file a CLRA claim for damages notify the defendant of their claims at least 30 days before suing.  Cal. Civ. Code § 1782(a).  In a putative class action, however, this requirement is satisfied when one named plaintiff complies with § 1782(a).  *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) ("When the demand letter was sent, Defendant was on notice it was being sued by a putative class, and thus the notice was sufficient 'to facilitate pre-complaint settlement,' which is the purpose of the CLRA notice requirements.") (quoting *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836 CW, 2009 WL 839076, at *2 (N.D. Cal. March 30, 2009)).

---

[10] Cali does not dispute that Klaehn provided notice under § 1782.  MTD at 30–31.

Here, Klaehn's CLRA notice letter satisfies § 1782(a). FAC at ¶¶ 23, 86; Dkt. No. 14-1. Plaintiffs filed the FAC on October 16, 2019. *Id.* Klaehn's letter was mailed 79 days earlier. Dkt. No. 14-1, Opp. at 22. The letter identifies three violations of the CLRA, and states that it is "on behalf of [Klaehn] and all other similarly situated purchasers of [Cali's] Bamboo Flooring." Dkt. No. 14-1. The letter put Cali on notice of potential class claims for purposes of § 1782(a). Accordingly, the notice requirement was satisfied.

### 3.   CLRA Affidavit Requirement

Finally, Cali argues, and the Court agrees, that Plaintiffs failed to comply with the CLRA's affidavit requirement. *See* Cal. Civ. Code § 1780(d) ("[C]oncurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action. If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice."). Plaintiffs offer no argument opposing dismissal for failing to comply with § 1780(d). Should Plaintiffs amend the FAC, they must comply with this requirement.

### CONCLUSION

Cali's motion is **GRANTED IN PART**. Dkt. No. 15. For the reasons stated above, each of Plaintiffs' claims is **DISMISSED**. Because it is not completely certain Plaintiffs cannot salvage their complaint by amendment, Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**. *See* Fed. R. Civ. P. 15(a)(2) (requiring that "[t]he court should freely give leave when justice so requires."). Any amended complaint must be filed within **THREE WEEKS OF THE DATE OF THIS ORDER**.

**IT IS SO ORDERED**.

Dated: July 13, 2020

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge